UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

THOMAS OKUNUGA, an individual,

    Plaintiff,

    v.

YAKIMA COUNTY, WASHINGTON; CENTRAL WASHINGTON FAIR ASSOCIATION; JAMES DeLORETTO, DAN LASWELL, and GAIL RAGLAND, individuals; LIEUTENANT DAN WILSON, individually and in his official capacity; YAKIMA COUNTY SHERIFF'S OFFICE; STARPLEX SECURITY, an Oregon corporation,

    Defendants.

NO. CV-06-3088-RHW

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Defendant Starplex Corporation, James DeLoretto and Dan Lasswell's Motion for Partial Summary Judgment Regarding Plaintiff's Federal Claims (Ct. Rec. 26). A telephonic hearing was held on July 21, 2008. Diana Vogt appeared on behalf of Plaintiff; Thomas Collins appeared on behalf of Defendants Starplex Corporation, James DeLoretto, and Dan Lasswell (hereinafter "Starplex Defendants"); and Alfred Schweppe appeared on behalf of Defendants Yakima County, Central Washington Fair Association (CWFA), Gail Ragland, Lieutenant Dan Wilson, and Yakima County Sheriff's Office (hereinafter "Yakima Defendants"). Through this motion, the Starplex Defendants seek

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** * 1

dismissal of Plaintiff's federal claims.[1]

## STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322.

"When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed.R.Civ.Pro. 56(e)) (emphasis in original) (internal citations omitted). When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS

The facts below are not disputed unless otherwise indicated.

Defendant the Central Washington Fair Association is a non-profit

---

[1] The Court notes that upon dismissal of Plaintiff's federal claims against the Starplex Defendant, several State law claims against them remain over which the Court may exercise supplemental jurisdiction. 28 U.S.C. § 1367.

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** \* 2

corporation of the State of Washington which manages and operates the Central Washington State Fairgrounds. The CWFA operates the Fairgrounds under a lease from Yakima County, which owns the Fairgrounds and the improvements thereon. The lease between the CWFA and Yakima County does not mention crowd management or security at any events held at the Fairgrounds, although it does require public liability insurance to protect the County from any actions or damages against it or the CWFA. Defendant Starplex Corporation contracted with CWFA to provide crowd management, traffic and parking management, and guest services for events at the Fairgrounds. Defendants DeLoretto and Lasswell were employed as private security personnel under contract through Starplex with the CWFA.

Plaintiff, Mr. Okunuga, was a vendor at the Central Washington Fair in 2004. On September 27, 2004, Plaintiff parked his motor home near or at Gate #3 at the Fairgrounds. Defendants characterize Gate #3 as an "emergency exit"; Plaintiff disputes this characterization and any inference that Plaintiff's parking there posed any threat to the safety of fair attendees or others. Plaintiff notes that there are six other entrances to the Fairgrounds, and that the "rules and regulations" for Exhibitors as the Fair do not contain specific rules regarding parking at Gate #3. Additionally, to park at Gate #3, an employee (presumably a Starplex employee) had to have unlocked the gate to let Plaintiff's vehicle inside.

As a vendor, Plaintiff was attempting to take delivery of a shipment from a UPS truck parked just inside Gate #3. The spot where Plaintiff was parked was marked as a "no parking" zone and was used for emergency vehicles and also for UPS and FedEx delivery vehicles. The gate was locked and a parking attendant had to open and close the gate for access. Plaintiff believes the area immediately outside Gate #3 was for emergency vehicles, and that he was parked in a "no parking" zone. There were no emergency vehicles in that immediate area at the

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** * 3

time, and there were both an ambulance and a fire truck at other locations within the Fairgrounds at that time.

Defendants DeLoretto and Lasswell approached Plaintiff and asked him to move his motor home several times.  After Plaintiff repeatedly refused to move his vehicle, DeLoretto told Plaintiff he would be ejected from the Fairgrounds and threatened to cancel his contract and close his booth.  At that time, Defendants detained Plaintiff, told him he was under arrest, escorted him against his will to the nearby Starplex office, and had someone contact the Yakima County Sheriff's Department.  Plaintiff contends that a different security employee permitted him to park where he did, that he was next in line to receive his packages, and that he would have only been about five more minutes had Defendants not detained him.  At the time he was seized, Plaintiff began calling for help and he went limp; he did not attempt to strike or harm the security officers.  To detain Plaintiff, Plaintiff states DeLoretto and Lasswell dragged him across the ground, put a hand over his mouth, used an "arm bar," and placed handcuffs on him.

The Sheriff's Department dispatched an officer, Deputy McIlrath, to the Fairgrounds, and he took charge of Plaintiff and eventually transported him to the Yakima County Jail where he was arrested for criminal trespass on private property.  Upon his arrival at the Fairgrounds, however, McIlrath spoke to Plaintiff and assessed the situation, telling the officer assigned to the Fair, Lt. Wilson, that he did not think an arrest was warranted.  Wilson told McIlrath that because Defendants (the security guards) had found it necessary to place handcuffs on Plaintiff, McIlrath had to arrest Plaintiff.  Defendant DeLoretto permitted Plaintiff to return to the Fairgrounds later to pick up his goods.

Defendants submit that they had no contractual relationship with Plaintiff, nor did they have the ability or power to unilaterally cancel a vendor's contract at the Central Washington Fair.  They insist this power was held solely and

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** * 4

exclusively by the CWFA. Plaintiff disagrees and states that the CWFA said in their answers to interrogatories that DeLoretto had the authority to cancel Plaintiff's contract, and that he in fact did cancel Plaintiff's contract. Plaintiff also contends that DeLoretto admitted in his incident report and during his deposition that he cancelled Plaintiff's contract. Plaintiff's vendor contract was cancelled and he was told to remove his merchandise from the Fairgrounds.

Defendants submit there is no evidence that there was any racial motivation to their actions. However, Plaintiff believes DeLoretto's and Lasswell's refusal to believe another employee had permitted him to park at Gate #3 and their unreasonably hostile response to him were caused by racial bias. Plaintiff cites to the fact that he was one of only two African American vendors at the Fair, DeLoretto had cancelled other vendors' contracts for much more serious violations than for parking in a "no parking" zone; and no other vendor had his booth closed entirely after DeLoretto cancelled his contract. In other words, Plaintiff believes he was singled out and treated differently due to his race.

Defendants maintain that Plaintiff could not point to a specific fact, statement or action in his deposition that supports his claim of racial discrimination, but Plaintiff disputes this characterization and lists seven reasons in his statement of facts that show why Plaintiff believes his civil rights were violated: (1) the court at Plaintiff's arraignment found there was no probable cause for arrest; (2) the prosecuting attorney agreed and dismissed the case; (3) the judge stated on the record that Plaintiff's presence on the Fairgrounds was not unlawful; (4) the judge stated that "[s]ecurity occasionally gets a little carried away out there. . . ."; (5) Plaintiff was given only one hour to load up his merchandise and vacate his booth, and the Sheriff's Office was called when he arrived to pick up his goods; (6) the Washington State Licensing Department suspended Defendants' license and found they engaged in "unprofessional

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** * 5

conduct" (in an unrelated matter); and (7) DeLoretto promotes Starplex as a company with a "new" approach to crowd management based in part on "recruiting individuals with interpersonal skills." Additionally, at the hearing, Plaintiff explained that the Court should infer a discriminatory intent (1) from DeLoretto's belief that Plaintiff immediately had an "attitude"; (2) from DeLoretto's statement that Plaintiff's dress, in African garb, made it impossible for him to tell if Plaintiff was carrying a weapon; (3) from DeLoretto's comments on Plaintiff's large size; (4) from the fact that by arresting Plaintiff, the Starplex Defendants actually delayed the very action they wanted accomplished (moving Plaintiff's RV); and (5) from the fact that a different Starplex employee had let Plaintiff park his vehicle inside the gate without any issue.

## DISCUSSION

Defendants move the Court to dismiss Plaintiff's federal claims under §§ 1983 and 1981.

**A.   Section 1983 Claims**

Section 1983 creates a cause of action against any person who, acting under color of state law, violates the constitutional rights of another person. 42 U.S.C. § 1983; *Mabe v. San Bernardino County, Dep't of Public Soc. Serv.*, 237 F.3d 1101, 1106 (9th Cir. 2001). To succeed on a § 1983 claim, Plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived him of a constitutional right. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). In this case, Plaintiff alleges a violation of his Fourth Amendment right to be free of unreasonable seizures (applicable through the Fourteenth Amendment) and a violation of his Equal Protection rights.

Defendants' main argument is based on their assertion that they are not

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT  * 6**

"state actors"[2] and thus cannot be held liable under § 1983. In order for the Plaintiff to have a valid § 1983 claim against the Starplex Defendants, they must have acted under color of state law. *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001). A defendant has acted under color of state law when he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)). Private citizens are generally not liable under § 1983 because they do not act under color of state law. *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). An exception can be made if the private citizen conspires with a state actor or is jointly engaged with a state actor when undertaking a prohibited action. *Tower v. Glover*, 467 U.S. 914, 920 (1984).

The ultimate inquiry in deciding whether a person is a state actor is if the constitutional deprivation is "fairly attributable to the state." *Rendell-Baker v. Kahn*, 457 U.S. 830, 838 (1992). There are "at least" four criteria that can be used to determine whether a private party is a state actor for § 1983 purposes: public function, joint action, government compulsion, and governmental nexus. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

In examining the question whether the Starplex Defendants were state actors when they arrested Plaintiff and cancelled his contract, the Court begins

---

[2] The term "state action" is used in relation to a claim of a violation of one's Fourteenth Amendment rights, and it is not always synonymous with the "color of state law" requirements of § 1983. *Howerton v. Gabica*, 708 F.2d 380, 382 n.5 (9th Cir. 1983). Quite a few cases have treated them as equivalent concepts, however, and "when the claim is that the private parties have jointly participated with a state official, ordinarily proof of the joint participation would establish both state action and action under color of state law." *Id.*

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** * 7

with the question whether, had the Starplex Defendants arrested Plaintiff and never called the Yakima County Sheriff's Office, would they have been acting under color of law?  Plaintiff asserts that DeLoretto's use of the word "arrest" in conjunction with the County's ownership of the Fairgrounds and its relationship with the CWFA converts the Starplex Defendants into state actors.  However, the case law does not support this conclusion.

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Id.* at 1093 (citation and quotation marks omitted).  This test is satisfied only on a showing that the function at issue, in this case making an arrest, is "both traditionally and exclusively governmental." *Id.*  Defendants assert that they were private security guards making a citizen's arrest and did not act under color of law.  Plaintiff argues that arrests are actions normally reserved to the State, citing *Evans v. Newton*, 382 U.S. 296 (1966), but more recent Supreme Court case law expressly reserves the question whether and under what circumstances private security guards may be said to perform a public function for purposes of § 1983.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 163-64 (1978).

A case out of the Sixth Circuit, *Romanski v. Detroit Entertainment, L.L.C.*, 428 F.3d 629 (6th Cir. 2005), includes a good discussion of the § 1983 "color of law" requirement and private security guards in particular.  The *Romanski* court divides these cases into two groups:

> [A] line [ ] has been drawn in the cases.  The line divides cases in which a private actor exercises a power traditionally reserved to the state, but not exclusively reserved to it, *e.g.*, the common law shopkeeper's privilege, from cases in which a private actor exercises a power exclusively reserved to the state, *e.g.*, the police power.  Where private security guards are endowed by law with plenary police powers such that they are *de facto* police officers, they may qualify as state actors under the public function test.

*Id.* at 637.  Therefore, a security guard who can patrol and eject unruly patrons

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** * 8

from a hospital, but who could not carry a weapon and had to call police when individuals became belligerent, was not a state actor under § 1983. *See Johnson v. LaRabida Children's Hospital*, 372 F.3d 894, 896-97 (7th Cir. 2004). But casino security guards authorized under a Michigan statute to make arrests without warrants were found to be state actors because they were carrying out a public function. *Romanski*, 428 F.3d at 638.

The public function test, although not conclusive, points toward a finding that the Starplex Defendants were not acting under color of law when they arrested Plaintiff. They did not carry weapons, and they had to call the Yakima County Sheriff's Office after detaining Plaintiff so that a deputy could arrest him.

The Ninth Circuit has held that an individual making a citizen's arrest is not a state actor using the joint action test. *Collins v. Womancare*, 878 F.2d 1145, 1154-56 (9th Cir. 1989); *see also Stanley v. Goodwin*, 475 F.Supp.2d 1026, 1038-39 (D. Haw. 2006). "Under the joint action test, we consider whether 'the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior.'" *Kirtley*, 326 F.3d at 1093 (citation omitted). One way the joint action test is satisfied is if a "conspiracy" is shown. *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983). Joint action requires "a substantial degree of cooperative action." *Collins*, 878 F.2d at 1154. For example, merely complaining to the police, or even the execution of a sworn complaint which forms the basis of an arrest, is not enough to convert a private party's acts into state action. *Id.* at 1155 (citations omitted). In contrast, the Ninth Circuit has found joint action "between a landlord . . . and various police officers based on their sustained, joint efforts to evict" one of the landlord's tenants. *Id.* at 1154 (citing *Howerton*, 708 F.2d at 385). That holding was limited to circumstances

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** * 9

where the police at least appear to actively participate or sanction the private citizen's actions. *Id.* (quoting *Howerton*, 708 F.2d at 384).

Here, the benefits of the Starplex Defendants' actions flowed to the attendees of the Fair and, in the case of any arrests, to the Sheriff's Office and the State. However, the Sheriff's Office was not an active participant in Plaintiff's arrest, nor did its decision to take Plaintiff to the Sheriff's Office and charge him necessarily sanction the Starplex Defendants' actions. Beginning with the conclusion discussed above that the Starplex Defendants' actions alone were not made "under color of law," the Court concludes that their decision to contact the Sheriff's Office cannot alone convert those same actions into state action under Ninth Circuit case law. *See id.*

The final two tests, the compulsion test[3] and the governmental nexus test[4], do not apply to the facts at hand.

Although these tests may determine where state action lies, "the central question remains whether 'the alleged infringement of federal rights [is] fairly attributable to the government.'" *Id.* at 1096 (citation omitted). Plaintiff alleges in his Complaint that the Starplex Defendants worked cooperatively with the other Defendants to deprive him of his constitutional rights. It appears, viewing Plaintiff's version of the facts most favorably, that there is not a genuine issue of fact as to whether the Starplex Defendants were acting in conjunction with the

---

[3] "The compulsion test considers whether the coercive influence or 'significant encouragement' of the state effectively converts a private action into a government action." *Kirtley*, 326 F.3d at 1094.

[4] "Arguably the most vague of the four approaches, the nexus test asks whether 'there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself.'" *Kirtley*, 326 F.3d at 1094-95 (citation omitted).

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** * 10

County when they arrested Mr. Okunuga. Therefore, summary judgment is appropriate for Plaintiff's § 1983 claims.

**B.      Section 1981 Claim**

The Starplex Defendants also move the Court to grant summary judgment on Plaintiff's claim under 42 U.S.C. § 1981. Section 1981 states in pertinent part:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens. . . .
>
> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a) & (b). The rights protected by § 1981 "are protected against impairment by nongovernmental discrimination and impairment under color of State law." *Id.* § 1981(c). Therefore, the color of law requirement under § 1983 does not apply to § 1981 claims.

"Any claim brought under [§] 1981 . . . must initially identify an impaired 'contractual relationship,' under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Here, taking Plaintiff's version of the facts as true, the Starplex Defendants, through DeLoretto, had the power to terminate Plaintiff's contract, so this element is satisfied.

However, Plaintiff must also show *intentional* discrimination in his contract *on account of race* to proceed with his § 1981 claim. *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989). Plaintiff submits that his ejection from the Fair and Defendants' subsequent actions requiring him to close his booth and remove his merchandise from the Fairgrounds were based on a discriminatory motive. As support, Plaintiff states that DeLoretto had ejected vendors before for more

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** * 11

serious violations[5] and had never closed down their booths.  However, Plaintiff does not address what race or nationality the other vendors were, nor does he provide any other evidence of discriminatory motive or intent.

The Court must determine whether Plaintiff has introduced sufficient circumstantial evidence of intentional discrimination to create a genuine issue of fact, viewing the evidence in a light most favorable to Plaintiff.  Plaintiff submits that DeLoretto's immediate conclusion that Plaintiff had an "attitude" stemmed from racial bias.  Plaintiff also points out that he was dressed in African garb and was one of only two African American vendors at the Fair.  Plaintiff also lists seven factors in his statement of facts that he alleges show discriminatory intent.[6] The Starplex Defendants note that they did not eject Plaintiff or threaten to close his booth until he repeatedly refused to cooperate with their lawful requests to move his vehicle out of a "no parking" area.  Plaintiff does not dispute this fact.

---

[5] Plaintiff states other vendors had been ejected for violations such as inappropriate contact with Fair attendees, assaultive behavior, and selling inappropriate merchandise, among other offenses.

[6] Those seven factors are: (1) the court at Plaintiff's arraignment found there was no probable cause for arrest; (2) the prosecuting attorney agreed and dismissed the case; (3) the judge stated on the record that Plaintiff's presence on the Fairgrounds was not unlawful; (4) the judge stated that "[s]ecurity occasionally gets a little carried away out there. . . ."; (5) Plaintiff was given only one hour to load up his merchandise and vacate his booth, and the Sheriff's Office was called when he arrived to pick up his goods; (6) the Washington State Licensing Department suspended Defendants' license and found they engaged in "unprofessional conduct" (in an unrelated matter); and (7) DeLoretto promotes Starplex as a company with a "new" approach to crowd management based in part on "recruiting individuals with interpersonal skills."

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** ~ 12

Even drawing all inferences in Plaintiff's favor, the Court cannot conclude that Plaintiff has established a genuine issue of fact on the question of intentional discrimination. That he is African American, that he was dressed in traditional African clothing, and that he was mistreated are not disputed. However, these factors in and of themselves do not create an inference of intentional discrimination. Nor does Plaintiff's assertion that other vendors' booths had not been closed down in the past for more serious infractions, particularly considering both parties agree Plaintiff was not cooperating with the Starplex Defendants' lawful requests. Plaintiff has not established disparate treatment on the basis of race, so summary judgment is appropriate for this claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (finding summary judgment proper when there is "an absence of evidence to support the nonmoving party's case").

Accordingly, **IT IS HEREBY ORDERED** that Defendant Starplex Corporation, James DeLoretto and Dan Lasswell's Motion for Partial Summary Judgment Regarding Plaintiff's Federal Claims (Ct. Rec. 26) is **GRANTED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel.

**DATED** this 23rd day of July, 2008.

*S/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2006\Okunuga\sj.ord.wpd

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** * 13